[No. 54965-1-I. Division One. August 8, 2005.]

THE STATE OF WASHINGTON, *Appellant*, v. WAYNE H. HOLMES, *Respondent*.

*Janice E. Ellis, Prosecuting Attorney*, and *Thomas M. Curtis, Deputy*, for appellant.

*Eric Broman* and *Christopher Gibson* (of *Nielsen, Broman & Koch, P.L.L.C.*); and *Catherine E. Glinski*, for respondent.

¶1  GROSSE, J. — The Washington Supreme Court decision in *City of Redmond v. Moore*[1] did not invalidate the crime of driving while license suspended in the third degree.[2] Rather, it invalidated the process by which drivers have their licenses suspended in certain circumstances. Because police are not required to know whether a driver was afforded due process when his or her license was suspended in order to have probable cause to arrest a driver for driving while license suspended in the third degree, and then conduct a search subsequent to the arrest, we reverse.

## FACTS

¶2  On October 9, 2003, Wayne Holmes was stopped for a traffic infraction. The police officer checked the Department of Licensing (DOL) records which showed that Holmes' license had been suspended in the third degree for failing to pay his tickets.[3] The officer arrested Holmes for violating RCW 46.20.342(1)(c). In searching Holmes' person incident

---

[1] *City of Redmond v. Moore*, 151 Wn.2d 664, 91 P.3d 875 (2004).

[2] This case was heard during the same term as *State v. O'Brien*, No. 54827-1-I (argued May 25, 2005).

[3] Clerk's Papers (CP) at 9.

to the arrest, the officer found a pipe of the type commonly used to smoke drugs, pills, heroin, and cocaine in Holmes' left front pocket. After being read his *Miranda*[4] rights, Holmes told the police that there was cocaine and heroin in the car, along with a black bag by the front passenger seat that had syringes in it. The police then continued searching Holmes' vehicle and found heroin, cocaine, and drug paraphernalia. The Snohomish County Prosecutor charged Holmes with possession of a controlled substance.

¶3 After Holmes was arrested and charged, in *City of Redmond v. Moore*,[5] the Washington Supreme Court held that RCW 46.20.289 and .324(1) did not provide adequate protections for a defendant's due process rights and that an order suspending a license under those provisions was void.[6] Holmes moved to suppress the evidence seized from his vehicle, relying on the Supreme Court's decision in *Moore*[7] and a prior decision in *State v. White*.[8] Holmes argued that because his license suspension was unconstitutional, his arrest was therefore invalid, and evidence seized as a result of the unlawful arrest must be suppressed. The superior court agreed, suppressed the evidence, and dismissed the charge against Holmes. The State appeals.

## ANALYSIS

¶4 The central question in this case is not whether there is a good faith exception to the exclusionary rule. Instead the appropriate question is whether police officers are required to know for certain that the DOL provided sufficient due process in suspending a driver's license before they can form a reasonable belief that the crime of driving

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] *Moore*, 151 Wn.2d 664.

[6] *Moore*, 151 Wn.2d 664. The parties do not dispute that Holmes had his license suspended under the provisions implicated in *Moore*.

[7] *Moore*, 151 Wn.2d 664.

[8] *State v. White*, 97 Wn.2d 92, 640 P.2d 1061 (1982).

while license suspended in the third degree has been committed and arrest the driver. We conclude that police officers are not required to possess such knowledge to have probable cause to make an arrest in such circumstances.

¶5 Holmes argues that because the DOL suspended his license without due process, his subsequent arrest for driving while license suspended in the third degree lacked authority of law. Thus, he argues, the subsequent search of his car was an unconstitutional invasion of his privacy rights under Washington Constitution article I, section 7, triggering the automatic application of the exclusionary rule.

¶6 Holmes relies on *State v. White*[9] and our recent decision in *State v. Wallin*[10] in support of his argument. However, both cases are distinguishable. In *White*, the Washington Supreme Court held that a statute which made it a crime for a person to fail to disclose correct information to a police officer was unconstitutionally vague and could not be the basis of criminal sanctions. White was arrested under suspicion of violating this unconstitutionally vague statute and a subsequent search yielded incriminating goods. When White was arrested, there was no probable cause to believe White had committed any crime other than that defined by the unconstitutional statute.

¶7 The *White* court held that even though the police officer was enforcing a presumptively valid statute when he arrested White, the arrest was unlawful and the fruits of the search were subject to the exclusionary rule. In so holding, the Washington Supreme Court went to great lengths to distinguish its case from a nearly identical United States Supreme Court case, *Michigan v. DeFillippo*,[11] in which that Court found the evidence to be

---

[9] *White*, 97 Wn.2d 92.

[10] *State v. Wallin*, 125 Wn. App. 648, 105 P.3d 1037 (2005).

[11] *Michigan v. DeFillippo*, 443 U.S. 31, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979).

admissible.[12] In *DeFillippo*, the United States Supreme Court determined a similar statute to be unconstitutional and held that the purposes of the exclusionary rule would not have been served by suppressing evidence gained as the result of the police officers' good faith arrests under a presumptively valid statute.[13]

¶8 The *White* court distinguished its case from *De-Fillippo* on three grounds. First, the court determined White's arrest was partially based on a flagrantly unconstitutional statute and thus, the arrest was invalid. The court cited to the following language in *DeFillippo*:

> "The enactment of a law forecloses speculation by enforcement officers concerning its unconstitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws."[14]

The court determined that White's arrest had been at least partially based on a flagrantly unconstitutional statute and thus, even under *DeFillippo*, his arrest would have been invalid and the evidence inadmissible.

¶9 Second, the court determined that the officers' search and seizure of White was unreasonable under the Fourth Amendment because White's detention was unreasonably long and his refusal to disclose his name, address, and other information could not be the legal basis of an arrest.[15]

¶10 And finally, the *White* court determined that Washington Constitution article I, section 7 affords greater protections than the fourth amendment to the United States Constitution. The court reasoned:

> The result reached by the United States Supreme Court in *DeFillippo* is justifiable only if one accepts the basic premise

---

[12] *DeFillippo*, 443 U.S. 31.

[13] *DeFillippo*, 443 U.S. at 34-40.

[14] *White*, 97 Wn.2d at 103 (emphasis omitted) (quoting *DeFillippo*, 443 U.S. at 38).

[15] *White*, 97 Wn.2d at 103.

that the exclusionary rule is merely a remedial measure for Fourth Amendment violations. As a remedial measure, evidence is excluded only when the purposes of the exclusionary rule can be served. This approach permits the exclusionary remedy to be completely severed from the right to be free from unreasonable government intrusions. Const. art. 1, § 7 differs from this interpretation of the Fourth Amendment in that it clearly recognizes an individual's right to privacy with no express limitations.

The important place of the right to privacy in Const. art. I, § 7 seems to us to require that whenever the right is unreasonably violated, the remedy must follow.

. . . .

Without an immediate application of the exclusionary rule whenever an individual's right to privacy is unreasonably invaded, the protections of the Fourth Amendment and Const. art. 1, § 7 are seriously eroded. . . . Such a rule will add stability to the rights of individual citizens, discourage the Legislature from passing provisions akin to RCW 9A.76.020, and will make law enforcement more predictable.[16]

The court determined that because White's arrest was without authority of law, the subsequent search was an unreasonable abrogation of his privacy rights under the Washington Constitution, thereby triggering the automatic application of the exclusionary rule.

■ ¶11 *White* is distinguishable from the case at bar. The legal authority for Holmes' arrest flows from RCW 10.31.100(3)(e), which provides that, "Any police officer having probable cause to believe that a person has committed or is committing a violation of any of the following traffic laws shall have the authority to arrest the person: . . . RCW 46.20.342, relating to driving a motor vehicle while operator's license is suspended or revoked." Holmes was arrested for violating RCW 46.20.342(1)(c), which defines the crime of driving while license suspended in the third degree. The *Moore* court did not find RCW 46.20.342(1)(c) to be unconstitutional. Rather, it found RCW 46.20.289 and .324(1) to

---

[16] *White*, 97 Wn.2d at 109-12 (footnote omitted).

be unconstitutional because they allowed for the suspension of licenses without affording due process.

¶12 In *White*, the basis of the search was the officer's reasonable belief that White had committed a constitutionally invalid crime. White's arrest, therefore, was without authority of law because the crime that formed the basis of that arrest was itself invalid. The legal authority for Holmes' arrest and search was a constitutionally valid statute, RCW 10.31.100(3)(e), and the arresting officer's reasonable belief that Holmes had committed the constitutionally valid crime of driving with a suspended license. Because the crime that formed the basis of Holmes' arrest was constitutionally valid, it provided valid authority for his arrest if supported by probable cause. Holmes' right to privacy is thus measured by whether probable cause justified his arrest, as he does not challenge the scope of the subsequent search.[17]

¶13 In *State v. Wallin*,[18] Wallin violated the terms of his community placement for the crime of first degree child molestation, committed between 1988 and 1990. As a result, the court extended the period of his community placement to the statutory maximum of 10 years. In 2003, a neighbor reported Wallin was taking pictures of her teenage nieces from his apartment window. The police reported the incident to Wallin's Community Corrections Officer (CCO), who felt this information formed the basis of a " 'well-founded suspicion' " or a " 'reasonable suspicion' " of a parole violation justifying a search of Wallin's home without a warrant.[19] The subsequent search of Wallin's apartment yielded evidence of additional crimes.

¶14 As it turned out, the order extending Wallin's community placement was invalid because the statute autho-

---

[17] *See State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986) (discussing permissible scope of the search of an automobile incident to arrest).

[18] *State v. Wallin*, 125 Wn. App. 648, 105 P.3d 1037 (2005).

[19] *See Wallin*, 125 Wn. App. at 655 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 876-78, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987) and *State v. Lucas*, 56 Wn. App. 236, 244, 783 P.2d 121 (1989)).

rizing the extension applied only to crimes committed after 1996. As a result, the lessened expectation of privacy among persons on community placement, which justified the CCO's warrantless search of Wallin's home, was inapplicable. Citing *White*, we determined the search unreasonably violated Wallin's privacy because there was no authority of law for the warrantless search. Thus, we held that the evidence must be suppressed.

¶15 *Wallin* is distinguishable from the case at bar for similar reasons. *Wallin* involved a warrantless search based upon an unlawful court order. The search was an unconstitutional invasion of Wallin's privacy rights because the court order that put Wallin in community placement, and ultimately justified the search under a relaxed expectation of privacy, was itself unlawful. Again, here the legal authority for Holmes' arrest and search was a constitutionally valid statute, RCW 10.31.100(3)(e), and the arresting officer's reasonable belief that Holmes had committed the constitutionally valid crime of driving with a suspended license. The extent of Holmes' right to privacy is therefore determined by the presence of probable cause to justify his arrest, and not, as was the case in *Wallin*, upon the validity of a court order which had the effect of abrogating his right to privacy.

■■ ¶16 Thus, the relevant question here is whether Holmes' arrest was valid. If the arrest was valid, the fruits of the search are admissible. The legal standard for a valid arrest is probable cause.

> "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed."[20]

---

[20] *State v. Harrell*, 83 Wn. App. 393, 399, 923 P.2d 698 (1996) (quoting *State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986)).

Probable cause does not require the police officer to have evidence to prove each element of the crime beyond a reasonable doubt.[21]

¶17 In *State v. Gaddy*, a decision handed down after *Moore*, the Washington Supreme Court held that DOL records are presumptively reliable and may provide probable cause to arrest a driver, even if the information turns out to be wrong.[22] In that case, police officers arrested Gaddy for driving while license suspended in the third degree and a subsequent search of her car uncovered illegal drugs. Gaddy moved to suppress evidence discovered during the search, arguing that the DOL information was incorrect and that the erroneous information did not provide probable cause for her arrest. In support of her argument, she maintained that her driver's license was not actually suspended at the time of her arrest. Our Supreme Court affirmed the superior court's decision denying Gaddy's motion to suppress, concluding that DOL records are presumptively reliable under the *Aguilar-Spinelli*[23] test and that Gaddy did not overcome that presumption. Thus, the DOL records provided probable cause to arrest Gaddy, even if they had erroneously shown that her license had been suspended.

¶18 Here, the police officer stopped Holmes because his car had defective license plate lights that made the license plate impossible to read. The police officer then checked the DOL's records which showed that Holmes' driver's license had been suspended in the third degree for failing to pay his tickets.[24] According to *Gaddy*, this kind of information is enough to establish probable cause to arrest Holmes for driving while license suspended in the third degree. Thus,

---

[21] *State v. Gaddy*, 152 Wn.2d 64, 70, 93 P.3d 872 (2004).

[22] *State v. Gaddy*, 152 Wn.2d 64, 93 P.3d 872 (2004).

[23] *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *State v. Jackson*, 102 Wn.2d 432, 443, 688 P.2d 136 (1984).

[24] CP at 9.

Holmes' arrest was supported by probable cause and the fruits of the search are admissible.

¶19 While the case at bar was being reviewed, the Washington Supreme Court issued its decision in *State v. Pulfrey*.[25] In *Pulfrey*, the Supreme Court refused to consider whether *Moore* rendered invalid Pulfrey's arrest for driving with license suspended in the third degree. In so doing, the Supreme Court stated the following:

> Pulfrey believes *Moore* renders void his arrest for driving while license suspended in the third degree. However, this result does not necessarily follow from our holding in *Moore*.
>
> In *Moore* we struck down only two sections of the broader driver's license chapter. Other sections were left untouched, and these sections provide a means for suspending a license. RCW 46.20.342(1)(c), the statute that defines driving while license suspended in the third degree, lists six different reasons for the suspension that render the offense a third degree violation, only one of which is now suspect because of *Moore*. Thus, for Pulfrey to benefit from our opinion in *Moore*, he must show
> that his license was suspended under the statutes declared unconstitutional.
>
> The record in this case does not indicate why Pulfrey's license was suspended. He has not shown that his license was suspended under the unconstitutional statutes and therefore is not entitled to relief. Pulfrey was lawfully arrested, and thus the search incident to that arrest was also lawful. . . .
>
> . . . .
>
> . . . We do not consider Pulfrey's *Moore* claim since he has not shown he is entitled to relief under that decision, and affirm.[26]

These pronouncements in dictum appear to directly contradict the Supreme Court's holding in *Gaddy*; however, because the court did not decide Pulfrey's challenge based on *Moore* and did not abrogate *Gaddy*, we do not believe *Pulfrey* requires us to conclude that Holmes' arrest was invalid.

---

[25] *State v Pulfrey*, 154 Wn.2d 517, 111 P.3d 1162 (2005).

[26] *Pulfrey*, 154 Wn.2d at 529-30.

¶20 For the above reasons, we reverse the superior court's suppression order.

ELLINGTON, A.C.J., and BAKER, J., concur.

Reconsideration denied September 22, 2005.

Review granted at 156 Wn.2d 1001 (2006).