122 P.3d 187 (2005)
130 Wash.App. 159
STATE of Washington, Respondent,
v.
Jack Raymond CARNAHAN, Appellant.
No. 31084-8-II.
Court of Appeals of Washington, Division 2.
November 1, 2005.
*188 Susan Irene Baur, Cowlitz County Prosecutor's Office, Kelso, WA, for Respondent.
John A. Hays, Attorney at Law, Longview, WA, for Appellant.
QUINN-BRINTNALL, C.J.
¶ 1 Jack Carnahan was stopped and arrested for driving while license suspended (DWLS); a search of his van incident to the arrest led to the discovery of methamphetamine; he was convicted of third degree DWLS and unlawful possession of a controlled substance (UPCS). Carnahan appeals, arguing that (1) the State improperly commented on his right to remain silent and (2) the officers lacked probable cause to stop him because certain statutes related to the predicate criminal statute were subsequently held unconstitutional in City of Redmond v. Moore, 151 Wash.2d 664, 91 P.3d 875 (2004). Carnahan is entitled to have his DWLS conviction vacated under Moore. His conviction for UPCS must be reversed because the State violated his right to remain silent and *189 such error was not harmless beyond a reasonable doubt. But we reject Carnahan's contention that the methamphetamine must be suppressed as the result of an unlawful stop: the officers had probable cause to stop and arrest Carnahan; Moore did not vitiate the probable cause for Carnahan's arrest. Thus, we remand for a new trial on the UPCS charge.

FACTS
¶ 2 On July 26, 2003, Officers Dan Sheridan and Dawn Bailey stopped a van driven by Carnahan. Officer Sheridan initiated the stop because he recognized Carnahan and police dispatch had confirmed his suspicion that Carnahan's driver's license was suspended.
¶ 3 Officer Sheridan contacted Carnahan on the driver's side of the van while Officer Bailey approached on the passenger side, remaining out of Carnahan's view. When Officer Sheridan returned to his patrol car with Carnahan's license, Officer Bailey saw Carnahan quickly turn, bend down, and lift up a floor mat. Officer Bailey made her presence known at that point, ordering Carnahan to keep his hands where she could see them.
¶ 4 After Carnahan was arrested for DWLS and placed in Officer Sheridan's patrol car, the two officers searched Carnahan's van. The officers found a small glass smoking pipe beneath the mat Officer Bailey had seen Carnahan move. The pipe tested positive for methamphetamine residue.
¶ 5 The State charged Carnahan with one count of UPCS and one count of third degree DWLS. At trial, Carnahan and two acquaintances, William Bell and Trudy Rangel, each testified that Carnahan loaned his van to Jim Harmon for a few days immediately preceding the day of Carnahan's arrest. Carnahan denied knowing that the pipe was in his van. According to Carnahan, when Officer Bailey saw him moving the floor mat, he was looking for cigarettes because he knew he was driving illegally and he wanted to smoke before being arrested.
¶ 6 After Carnahan rested his case, the State recalled Officer Sheridan as a rebuttal witness and asked the following questions:
Q. All right. Did Mr. Carnahan ever mention this Jim Harmon to you?
A. No.
Q. Okay. Did he ever mention Trudy Rangel to you?
A. No, he did not.
Q. How about Mr. Bell.
A. No.
[Prosecutor]: I don't have anything else.
Report of Proceedings (RP) at 90-91. The State followed up on this testimony in closing: "Sheridan says that Jack never told me anything about Trudy Rangel, about William Bell, about Jim Harmon. And that is what the testimony was." RP at 103. And in rebuttal, the State again argued: "I asked Deputy Sheridan, [']Did he ever mention anything about Trudy when you arrested him?['] [']No.['] [']Will?['][']No.['][']Jim?['][']No.['] He never mentioned those names until today." RP at 119.
¶ 7 The jury found Carnahan guilty as charged. This appeal followed.

ANALYSIS

VALIDITY OF DWLS ARREST
¶ 8 In Moore, the Washington Supreme Court held that RCW 46.20.289 and .324(1) were unconstitutional because those provisions did not provide for a hearing prior to the suspension of a driver's license. The court then upheld the dismissal of charges for DWLS because "a driver cannot be convicted of driving while his or her license is suspended or revoked if the suspension or revocation violates due process." Moore, 151 Wash.2d at 670, 91 P.3d 875.
¶ 9 Carnahan's license was suspended under RCW 46.20.289. He is therefore entitled under Moore to have his DWLS conviction vacated.[1]See State v. Pulfrey, *190 154 Wash.2d 517, 529-30, 111 P.3d 1162 (2005) (defendant not entitled to relief where he fails to show that his license was suspended under RCW 46.20.289 or .324(1)). But Carnahan also maintains that the methamphetamine found in his van must be suppressed and that his UPCS conviction must be reversed because his stop and arrest were based on the unconstitutional suspension of his license. The other divisions of this court have rejected this argument. See State v. Potter, 129 Wash.App. 494, 119 P.3d 877 (2005); State v. Holmes, 129 Wash.App. 24, 117 P.3d 360 (2005). We do likewise here.
¶ 10 Incident to a valid arrest, law enforcement may conduct a warrantless search of the arrestee's person and the passenger compartment of the vehicle that he was driving at the time of the arrest. State v. Johnson, 128 Wash.2d 431, 447, 909 P.2d 293 (1996); State v. Stroud, 106 Wash.2d 144, 152, 720 P.2d 436 (1986). An arrest is valid if there is lawful authority for it and it is based on probable cause. State v. Gaddy, 152 Wash.2d 64, 70, 93 P.3d 872 (2004). RCW 10.31.100(3)(e) provides the legal authority for a DWLS arrest. "Probable cause exists when the arresting officer is aware of facts or circumstances, based on reasonably trustworthy information, sufficient to cause a reasonable officer to believe a crime has been committed." Gaddy, 152 Wash.2d at 70, 93 P.3d 872 (emphasis omitted).
¶ 11 An arrest based on probable cause is generally valid even if it is predicated on a statute subsequently ruled unconstitutional. Michigan v. DeFillippo, 443 U.S. 31, 37-38, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); State v. White, 97 Wash.2d 92, 103, 640 P.2d 1061 (1982). The probable cause determination "rest[s] on the totality of facts and circumstances within the officer's knowledge at the time of the arrest." State v. Fricks, 91 Wash.2d 391, 398, 588 P.2d 1328 (1979) (emphasis added). "Police are charged to enforce laws until and unless they are declared unconstitutional." DeFillippo, 443 U.S. at 38, 99 S.Ct. 2627. The arrest is invalid only if the statute at issue is "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." White, 97 Wash.2d at 103, 640 P.2d 1061 (emphasis omitted) (quoting DeFillippo, 443 U.S. at 38, 99 S.Ct. 2627).[2]
¶ 12 Divisions One and Three of this court have assessed different statutes when applying the "gross and flagrant unconstitutional" test to the DWLS statutes after Moore. Division One assessed RCW 46.20.342(1)(c), which defines the crime of third degree DWLS. Holmes, 117 P.3d at 362-63. Division Three assessed RCW 46.20.289 and .324(1), the license suspension provisions struck down in Moore. Potter, 119 P.3d at 878-79. We need not address this difference because we agree with the ultimate conclusion of each court.
¶ 13 The Moore court did not hold that RCW 46.20.342(1)(c) was unconstitutional; it merely held unconstitutional two means for suspending a driver's license. And as evidenced by the four dissenting justices in Moore, the provisions of RCW 46.20.289 and .324(1) were not so grossly and flagrantly unconstitutional that a person of reasonable prudence would be bound to see it.
*191 ¶ 14 Because no statutes at issue here were grossly and flagrantly unconstitutional, the remaining question is whether Officer Sheridan had probable cause to stop and arrest Carnahan for DWLS. The answer to that question is clearly "yes." Officer Sheridan made the stop and arrest because he recognized Carnahan as the driver of the vehicle and police dispatch had confirmed his suspicion that Carnahan's driver's license was suspended. See Gaddy, 152 Wash.2d at 73-74, 93 P.3d 872 (probable cause established where Department of Licensing records state that an individual's driver's license is suspended). Because Carnahan's stop and arrest was predicated on probable cause, the subsequent search of his van and seizure of the pipe with methamphetamine residue was lawful.[3] Carnahan is not entitled to have his UPCS conviction reversed on this basis.

COMMENT ON SILENCE
¶ 15 Carnahan maintains that Officer Sheridan's rebuttal testimony and the State's closing were improper comments on Carnahan's exercise of his right to remain silent. We agree and, because these errors were not harmless beyond a reasonable doubt, we reverse Carnahan's UPCS conviction.
¶ 16 The propriety of introducing testimony that a defendant exercised his right to remain silent generally turns on whether the right was asserted before or after arrest and before or after giving Miranda[4] warnings. State v. Curtis, 110 Wash.App. 6, 11, 37 P.3d 1274 (2002). In limited circumstances, mentioning a defendant's pre-arrest silence may be proper, particularly when done to impeach the defendant's credibility. Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (permissible to impeach defendant's claim of self-defense by referencing defendant's pre-arrest silence in not reporting a stabbing for two weeks); State v. Easter, 130 Wash.2d 228, 237, 922 P.2d 1285 (1996). Or for example, when a defendant chooses to talk to law enforcement, either before or after arrest, the State may comment both on what the defendant did and did not say. State v. Clark, 143 Wash.2d 731, 765, 24 P.3d 1006, cert. denied, 534 U.S. 1000, 122 S.Ct. 475, 151 L.Ed.2d 389 (2001). But where a defendant exercises his constitutional right to remain silent post-arrest, it is well settled that the State may not comment on or otherwise exploit that decision. Doyle v. Ohio, 426 U.S. 610, 618-19, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).
¶ 17 The facts of this case mirror those in Doyle. In Doyle, the defendants were arrested for selling marijuana and they exercised their right to remain silent. At trial, the defendants testified that they had been framed. The prosecutor then questioned the defendants as to why they had not told their story when they were arrested. The Doyle Court held that the prosecutor's questioning was improper. As the Court put it, because Miranda warnings carry an implicit assurance *192 that silence will carry no penalty, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Doyle, 426 U.S. at 618, 96 S.Ct. 2240.
¶ 18 Here, the State contends that it properly questioned the legitimacy of Carnahan's trial defense by highlighting to the jury that Harmon had not been mentioned on the day of Carnahan's arrest. Doyle precludes this assertion. The pipe was discovered only after Carnahan was arrested and sitting in the back of a patrol car. Presumably, Carnahan had been given Miranda warnings at this point; he surely would have been before being questioned about the pipe. Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); Miranda, 384 U.S. at 457-58, 86 S.Ct. 1602. There is no evidence that Carnahan made any statements after his arrest. If Carnahan had waived his right to remain silent when confronted with the pipe, the State could have proceeded as it did in this case. But Carnahan had a right not to talk and he chose to exercise it. The State's use of Carnahan's silence as substantive evidence of guilt violated Carnahan's right to remain silent.
¶ 19 We must next determine whether the comments require reversal of Carnahan's UPCS conviction. Carnahan did not object to Officer Sheridan's rebuttal testimony or the use of that testimony in closing. Nevertheless, he may raise these comments for the first time on appeal because they involve manifest constitutional error. RAP 2.5(a); State v. Romero, 113 Wash.App. 779, 786, 790-91, 54 P.3d 1255 (2002) (first time review is available for a comment on silence; it is generally not available for a mere reference to silence). These comments require reversal unless we are convinced beyond a reasonable doubt that, but for the State's improper conduct, any reasonable jury would have found Carnahan guilty. Easter, 130 Wash.2d at 242, 922 P.2d 1285. We cannot reach that conclusion here.
¶ 20 The State's case was strong: Officer Bailey testified that she observed Carnahan wait until Officer Sheridan was out of sight before he made a quick movement to lift up the floor mat where the pipe was eventually found. But Officer Bailey did not see Carnahan holding the pipe, nor did she see Carnahan remove anything from his person.
¶ 21 Moreover, the State's timing and deliberate presentation and use of the evidence here also establishes why the errors cannot be deemed harmless. By reopening its case solely to elicit the improper testimony from Officer Sheridan, the State gave that testimony special importance. The State then repeatedly emphasized the improper testimony in closing to discredit Carnahan's trial defense. Under the facts of this case, we cannot say beyond a reasonable doubt that any reasonable jury would have found Carnahan guilty. Carnahan's UPCS conviction must therefore be reversed.
¶ 22 We vacate Carnahan's DWLS conviction, reverse his UPCS conviction, and remand for a new trial.
We concur: BRIDGEWATER, J., and MORGAN, J. Pro Tem.
NOTES
[1] We vacate Carnahan's DWLS conviction although his appellate counsel has not asked for this relief. Carnahan's appeal focuses solely on having his UPCS conviction reversed. Generally, we do not grant relief where relief is not requested. In re Estate of Overmire, 58 Wash.App. 531, 536 n. 2, 794 P.2d 518 (1990); see also RAP 10.3(a) (requirements of appellant's brief). But we are also cognizant that relief could and would be obtained through a personal restraint petition. See In re Personal Restraint of Orange, 152 Wash.2d 795, 814, 100 P.3d 291 (2004) (criminal appellant receives ineffective assistance of counsel where counsel fails to raise an issue that would entitle him to a new trial). In the interest of judicial economy, we expedite the process and grant relief here.
[2] DeFillippo involved a defendant arrested under a stop-and-identify ordinance, with a search incident to the arrest turning up drugs. The state Court of Appeals suppressed the drugs based on its conclusion that the ordinance was void for vagueness. The United States Supreme Court assumed arguendo that the ordinance was unconstitutional, but nonetheless reversed the lower court's suppression ruling.

White involved an arrest under a stop-and-identify statute that led to the discovery of evidence and a confession. The Washington Supreme Court suppressed the fruits of the arrest, concluding that the arresting statute was grossly and flagrantly unconstitutional because "substantially the same language in a different statute ha[d] been adjudicated unconstitutional." White, 97 Wash.2d at 103, 640 P.2d 1061.
[3] In Pulfrey, the defendant made the same argument that Carnahan makes here, i.e., that the drugs found in his possession should be suppressed as the result of an unlawful arrest under Moore. The court refused to directly address the issue:

Pulfrey believes Moore renders void his arrest for driving while license suspended in the third degree. However, this result does not necessarily follow from our holding in Moore.
But we struck down only two sections of the broader driver's license chapter. Other sections were left untouched, and these sections provide a means for suspending a license. RCW 46.20.342(1)(c), the statute that defines driving while license suspended in the third degree, lists six different reasons for the suspension that render the offense a third degree violation, only one of which is now suspect because of Moore. Thus, for Pulfrey to benefit from our opinion in Moore, he must show that his license was suspended under the statutes declared unconstitutional.
The record in this case does not indicate why Pulfrey's license was suspended. He has not shown that his license was suspended under the unconstitutional statutes and therefore is not entitled to relief.
Pulfrey, 154 Wash.2d at 529-30, 111 P.3d 1162. This passage suggests that the court might have agreed with Pulfrey's suppression argument had he shown that his license was suspended under RCW 46.20.289 or .324(1). But since Pulfrey failed to make this showing, this passage is dictum. See Holmes, 117 P.3d at 364. The passage is also inconsistent with the court's prior precedent in White. Thus, we accord the passage no weight here.
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).