[Nos. 77822-1; 77849-3.  En Banc.]
Argued March 21, 2006.    Decided April 27, 2006.

THE STATE OF WASHINGTON, *Respondent*, v. JACOB JAMES POTTER, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. WAYNE H. HOLMES, *Petitioner*.

*William D. Edelblute*, for petitioner Potter.

*Christopher Gibson* and *David B. Koch* (of *Nielson, Broman & Koch, P.L.L.C.*), for petitioner Holmes.

*Steven J. Tucker, Prosecuting Attorney for Spokane County*, and *Kevin M. Korsmo, Deputy*, and *Janice E. Ellis, Prosecuting Attorney for Snohomish County*, and *Thomas M. Curtis, Deputy*, for respondent.

¶1  C. Johnson, J. — In *City of Redmond v. Moore*,[1] we held that some procedures by which the Department of Licensing (DOL) automatically suspended driver's licenses violated due process. In this consolidated case, police officers arrested petitioners for the offense of driving while license suspended (DWLS). During searches incident to the arrests, police officers found evidence of controlled substances. The incidents occurred prior to our decision in *Moore*. The State charged petitioners with unlawful possession of controlled substances. Relying on *Moore*, the trial courts granted their motions to suppress the evidence and dismissed the charges. Divisions One and Three of the Court of Appeals reversed. We affirm the Court of Appeals.

## FACTS

## POTTER

¶2  Spokane County Deputy Hause stopped Jacob J. Potter's vehicle in Spokane on November 17, 2003, after observing the vehicle avoid his marked patrol car in a suspicious manner, cross a double yellow line, and fail to turn into the immediate travel lane while making a turn. Deputy Hause identified the driver as Jacob Potter and arrested him for DWLS in the third degree. After Potter was handcuffed outside the vehicle, Deputy Hause searched the car. On the ground next to where Potter was handcuffed, Deputy Hause found a clear plastic baggie that contained a crystal-like substance. He observed that the bag was not wet or dirty, though it had been raining or

---

[1] 151 Wn.2d 664, 91 P.3d 875 (2004).

snowing during much of the day. Deputy Hause arrested Potter for possession of a controlled substance.

¶3 In Spokane County Superior Court, the State charged Potter with one count of possession of a controlled substance for methamphetamine. Potter filed a motion to suppress the evidence obtained during the search incident to arrest on the grounds his arrest was invalid in light of *Moore.* The trial court granted his motion and dismissed the charge. The State appealed and the Court of Appeals reversed, holding that the officer had probable cause to arrest Potter for DWLS and that "an arrest is not invalid for lack of probable cause simply because the criminal statute a defendant is arrested under is later found to be unconstitutional." *State v. Potter,* 129 Wn. App. 494, 497, 119 P.3d 877 (2005).

## HOLMES

¶4 On October 9, 2003, Mountlake Terrace Police Officers Elrod and Werfelmann stopped Wayne H. Holmes for driving with defective license plate lights. Holmes identified himself and Officer Elrod determined through DOL records that Holmes' license was suspended. Officer Elrod arrested Holmes for DWLS in the third degree and searched his person and his car, finding two pipes with drug residue, pills, syringes, heroin, and cocaine.

¶5 In Snohomish County Superior Court, the State charged Holmes with possession of a controlled substance for heroin. Holmes filed a motion to suppress the evidence obtained during the search, arguing *Moore* invalidated his license suspension, the basis for the search incident to his arrest. The trial court granted the motion and dismissed the charge. The State appealed. The Court of Appeals reversed and held that police officers are not required to know for certain that the DOL provided sufficient due process in suspending a driver's license to have probable cause to make an arrest for DWLS. *State v. Holmes,* 129 Wn. App. 24, 27-28, 117 P.3d 360 (2005).

## ANALYSIS

■ ■ ¶6 Petitioners argue the evidence of controlled substances should be suppressed because the searches incident to their arrests are invalid under article I, section 7 of the Washington Constitution. Article I, section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Under article I, section 7, we have established an analytical approach that warrantless searches are per se unreasonable and exceptions to the warrant requirement are narrowly drawn. *State v. Parker*, 139 Wn.2d 486, 496, 987 P.2d 73 (1999). The State bears the burden of establishing an exception to the warrant requirement. A search incident to arrest under article I, section 7 is a recognized exception. The valid arrest provides the "authority of law" to search.

■ ■ ¶7 Under RCW 10.31.100(3)(e),[2] police officers may arrest a person without a warrant if they have probable cause to believe the person is driving with a suspended license. Probable cause exists when the arresting officer is aware of facts and circumstances, based on reasonably trustworthy information, sufficient to cause a reasonable officer to believe a crime has been committed. At the time of the arrest, the arresting officer need not have evidence to prove each element of the crime beyond a reasonable doubt. The officer is required only to have knowledge of facts sufficient to cause a reasonable person to believe that an offense has been committed. *State v. Gaddy*, 152 Wn.2d 64, 70, 93 P.3d 872 (2004).

---

[2] RCW 10.31.100 states, "A police officer having probable cause to believe that a person has committed or is committing a felony shall have the authority to arrest the person without a warrant. A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer, except as provided in subsections (1) through (10) of this section." Subsection (3)(e) provides that "[a]ny police officer having probable cause to believe that a person has committed or is committing a violation of . . . RCW 46.20.342, relating to driving a motor vehicle while operator's license is suspended or revoked," shall have the authority to arrest the person.

¶8 Officers in the present case arrested petitioners for violating RCW 46.20.342(1)(c). This statute makes it unlawful for any person to drive a motor vehicle while that person is in a suspended or revoked status or when his or her privilege to drive is suspended or revoked. Driving while license suspended or revoked in the third degree is a misdemeanor. RCW 46.20.342(1)(c).

¶9 In *Moore*, we held the procedure by which the DOL automatically suspended an individual's driver's license for failing to appear, pay, or comply with a traffic citation violated due process. We held that former RCW 46.20.289 (2002), which authorized the mandatory suspension of a driver's license without an opportunity for an administrative hearing, and former RCW 46.20.324(1) (1965), which provided that a person shall not be entitled to a driver improvement interview or formal hearing, failed to provide adequate due process. We applied the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), and concluded these statutes did not provide satisfactory safeguards to ensure against the erroneous deprivation of a driver's interest in the continued use and possession of his or her driver's license. *Moore*, 151 Wn.2d at 670-71, 77. We did not invalidate the crime of DWLS under RCW 46.20.342(1), but dismissed the DWLS charges on the grounds that a driver could not be convicted of the offense of DWLS where the underlying suspension violated due process.

¶10 Petitioners argue that *Moore* renders their arrests invalid because *Moore* held the procedures by which the DOL suspended their licenses unconstitutional. They contend that RCW 46.20.342(1)(c)(iv), which defines the crime of DWLS, is necessarily invalid in light of *Moore* because the statute incorporates, depends upon, and uses the precise language from the statutes *Moore* declared unconstitutional. Suppl. Br. of Pet'r Holmes at 8.

¶11 The State argues that the arrests were valid because the police had probable cause to believe the petitioners had committed the crime of DWLS based on the DOL records indicating their licenses were suspended. The State points

out that since Potter and Holmes were not charged with DWLS, the question is whether police had probable cause to believe they had committed a valid crime at the time of their arrests. Because we had not ruled on the constitutionality of the license suspension procedures at the time of their arrests, the State contends that petitioners could be convicted of DWLS regardless of the procedures by which the DOL had suspended or revoked their licenses. Therefore, the State argues, their arrests were valid.

¶12 We agree that to support petitioners' arrests, police needed probable cause to believe petitioners had committed the crime of DWLS. In *Gaddy*, we held that information supplied by the DOL record check is presumed reliable and may form the basis of probable cause to arrest an individual for driving with a suspended driver's license. *Gaddy*, 152 Wn.2d at 73. Police must have reliable information about the status of an individual's license, not necessarily the specific basis for which an individual's license was suspended. Here, information from the DOL records provided officers with reasonably trustworthy information sufficient to establish probable cause to believe petitioners' licenses were suspended. The subsequent invalidation of some of the license suspension procedures does not void the probable cause that existed to arrest petitioners for the crime of DWLS. Even after our decision in *Moore*, the crime of DWLS still exists. That a conviction for DWLS could not be later supported at trial, for whatever reason, does not invalidate the probable cause foundation for the arrest.

¶13 Petitioners rely on *State v. White*, 97 Wn.2d 92, 640 P.2d 1061 (1982), where we recognized a narrow exception to the general rule that police are charged to enforce laws until and unless they are declared unconstitutional. Under this general rule, an arrest under a statute that is valid at the time of the arrest and supported by probable cause remains valid even if the basis for the arrest is later held unconstitutional. The rule comes from the United States Supreme Court holding in *Michigan v. DeFillippo*, 443 U.S.

31, 38, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979), that "[t]he enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." In *White*, we held that a stop-and-identify statute was unconstitutionally vague and, applying the United States Supreme Court's exception to the general rule from *DeFillippo*, excluded evidence under that narrow exception for a law " 'so grossly and flagrantly unconstitutional' " that any reasonable person would see its flaws. *White*, 97 Wn.2d at 103 (quoting *DeFillippo*, 443 U.S. at 38). We deemed the exception applied to the stop-and-identify statute because "substantially the same language in a different statute has been adjudicated unconstitutional by a court of this state," and therefore, police should have known "by virtue of [the] prior dispositive judicial holding that it may not serve as the basis of a valid arrest." *White*, 97 Wn.2d at 103. For that reason, we held the evidence in White's case inadmissible.

¶14 That exception, however, does not apply here. Petitioners were arrested for the crime of DWLS. *Moore* invalidated some of the statutes setting forth license suspension procedures, but did not invalidate the DWLS statute that provided the basis for petitioners' arrests. As noted, DWLS remains a valid crime. This is unlike *White*, where we held the basis for White's arrest, the stop-and-identify statute, was unconstitutional.

¶15 Moreover, in *White*, we deemed the narrow exception for a "grossly and flagrantly" unconstitutional statute applied because of the prior dispositive ruling, holding the language of the statute at issue unconstitutional. In contrast to *White*, no cases have held that license suspension procedures generally are unconstitutional. Accordingly, *White* does not apply here.

## CONCLUSION

¶16 A valid search incident to arrest requires that police make an arrest that is supported by probable cause to

believe an individual has committed a crime. Probable cause is determined at the time of arrest. Since reliable information from the DOL indicated Potter and Holmes were committing the crime of DWLS in the third degree, officers had probable cause to arrest them. We affirm the Court of Appeals and remand with instructions to admit the evidence obtained during the searches incident to petitioners' valid arrests.

ALEXANDER, C.J., and MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.