60 P.3d 116 (2002)
114 Wash.App. 702
STATE of Washington, Respondent,
v.
Juliet C. GADDY, Appellant.
No. 48368-4-I.
Court of Appeals of Washington, Division 1.
December 23, 2002.
Reconsideration Denied February 5, 2003.
*118 David L. Donnan, Cheryl D. Aza, Washington Appellate Project, Seattle, WA, for Appellants.
Daniel Jason Clark, King County Deputy Prosecutor/Appellate Unit, Seattle, WA, for Respondents.
*117 BAKER, J.
Juliet Gaddy was convicted of narcotics possession after police arrested her for driving with a suspended license and discovered cocaine in a search incident to arrest. Because her license status information from the Department of Licensing (DOL) was reasonably reliable, we hold that the officers had probable cause to arrest.

I
Juliet Gaddy was stopped by a police officer after she failed to signal a right-hand turn of her automobile. When she was unable to produce a driver's license, the officer asked for her name and birthdate so that he could verify her driver's status on his mobile data terminal located in his police cruiser. She complied.
The officer learned that Gaddy's license was suspended. He and his partner returned to her vehicle and arrested her for driving with a suspended license. In a search of her vehicle incident to arrest, the officers discovered a substance they suspected was cocaine. Their suspicions proved correct and she was convicted of possession of cocaine. Gaddy appeals.

II
Gaddy first argues that her conviction must be reversed because the trial court failed to enter written findings of fact on her motion to suppress evidence until after she filed her opening brief on appeal. CrR 3.6(b) requires that at the conclusion of a hearing on a motion to suppress, the trial court shall enter written findings of fact and conclusions of law. But we will not reverse a conviction for tardy entry of findings unless the defendant can establish either that she was prejudiced by the delay or that the *119 findings and conclusions were tailored to meet the issues presented in her appellate brief.[1]
Gaddy argues that the lack of findings prejudiced her because the court's oral decision failed to resolve whether her driver's license was actually suspended at the time of the stop. But this is a substantive claim of error. It does not demonstrate prejudice as a result of delayed entry of findings. And there is no evidence that the findings were tailored to the issues she raises on appeal. Reversal is not required.
Gaddy next argues that the officer did not have probable cause to arrest her for driving with a suspended license. She contends that the license status information the police received on their mobile data terminals from the DOL was not reliable. Although Gaddy did not raise this issue to the trial court, because the issue implicates her constitutional right of privacy under the Fourth Amendment and article I, section 7 of the Washington Constitution, we will resolve it.[2]
Subject to narrow exceptions, an officer's warrantless seizure of a person is per se unreasonable.[3] But police may arrest a person without a warrant if they have probable cause to believe that she is driving with a suspended license.[4] Probable cause exists if there are sufficient facts and circumstances on reasonably trustworthy information that would cause a person of reasonable caution to believe that an offense has been committed.[5] Only the probability of criminal activity is required to show probable cause, not a prima facie showing of it.[6]
A determination of probable cause is made on the officer's knowledge at the time of the arrest.[7] Because the facts supporting probable cause are often founded on hearsay and hastily garnered knowledge, it is sufficient if the information is reasonably trustworthy; it need not be absolutely accurate.[8] Where police have made a warrantless arrest, the state bears the burden of proving the reliability of the information that formed the basis of probable cause.[9] Information obtained after the arrest may not be used to retroactively justify it.[10]
Under the "fellow officer" rule, an officer may rely on information contained in a police bulletin or "hot sheet" in effecting an arrest.[11] But if the issuing agency does not have sufficient information to constitute probable cause, the arrest is illegal, regardless of the good faith of the arresting officer.[12] Thus, it is not the "hot sheet" itself that supports probable cause, but the reliability of the original source of the information in the hot sheet.
In State v. Mance, Division Two held that police did not have probable cause to arrest the driver of an auto that a police bulletin indicated was stolen. The court noted that probable cause initially existed because the victim had reported the auto *120 stolen.[13] A citizen informant, as opposed to a "professional" police informant or an anonymous tipster, is presumptively reliable.[14] But the victim later canceled the report and, although the police department had a record of taking the call, at the time of the arrest it had not yet updated its bulletin.[15] The court held that because the police failed to offer any evidence that the delay in updating its records was reasonable, probable cause did not exist to arrest the driver.[16] It was not the error in the report that was dispositive, but only that the police had not demonstrated that their record keeping was reasonably reliable.[17]
Here, the Legislature, through a comprehensive statutory scheme, has vested in the DOL the responsibility of administering all aspects of motor vehicle driver licensing.[18] Moreover, in State v. Monson,[19] our Supreme Court stated that:
The special trustworthiness of official written statements [from the DOL] is found in the declarant's official duty and the high probability that the duty to make an accurate report has been performed.[[20]]
We hold that the information police officers receive on their mobile data terminals from the DOL is presumptively reliable.
Gaddy argues that she nevertheless rebutted the presumption of reliability by producing a report from the DOL evidencing that her license was issued two weeks prior to the date she was arrested. In Mance, the court held that the defendant had demonstrated the unreliability of police information by showing both that the stolen vehicle report was erroneous and that the police department had notice of it.[21] But in State v. Perea,[22] the court rejected a defendant's claim that DOL information was not reliable because it was a week old and it is possible for drivers licenses to be reinstated within a week.[23] He did not show that his license was, in fact, reinstated. Under the common sense test for "staleness," the court held that the information was sufficiently reliable to support probable cause.[24]
In this case, Gaddy did not produce evidence that her license was actually valid on the day of her arrest. Absent a showing that the information on which the police relied was in fact erroneous, Gaddy has failed to rebut the presumption that the DOL report was reasonably reliable. The officer had probable cause to arrest Gaddy.
We note that the officer's basis for probable cause included not only the license suspension report, but also the fact that Gaddy could not produce a driver's license prior to her arrest and that her demeanor was uncooperative and flighty during the encounter. Taken collectively, substantial evidence supported the trial court's conclusion that probable cause existed for Gaddy's arrest.[25]
*121 We decline to consider Gaddy's pro se supplemental brief because she cites neither to authority nor to the record, and provides no analysis.[26]
AFFIRMED.
KENNEDY, J., concurs.
BECKER, C.J. (dissenting).
I respectfully dissent from the decision to affirm. I would hold that the motion to suppress should have been granted. Before making an arrest for driving with license suspended, the police should have reliable and current information about the status of the driver's license. In this case there was no finding that the information the police received was reliable, and substantial reason to find that it was not.
The arrest of Juliet Gaddy for driving with a suspended license occurred on October 5, 2000 after the officer entered her name and birthdate into the computer in his patrol car. According to the officer, Gaddy's driving status appeared on the computer as license suspended in the third degree.[1] Gaddy was eventually convicted on a drug charge for cocaine found in her possession during a search incident to the arrest. She moved to suppress for lack of probable cause, arguing in part that she was not in suspended status at the time of arrest. She attached to her brief a copy of an abstract of driving record dated November 25, 2000 showing her license to be reinstated.[2]
The State, in response, submitted two other documents.[3] One is a copy of a suspension order that directs Gaddy to stop driving on September 14, 2000 due to cancellation of her insurance. The other is a letter dated January 29, 2001 from a custodian of records at the Department of Licensing. It states, "License Issued: September 21, 2000." The rest of the letter goes on to "certify" that "after a diligent search of the computer files the said official record indicates on October 5, 2000, the following statements apply to the status of the above named person: Had not reinstated his/her driving privilege. Was suspended/revoked in the third degree." The custodian's statement that Gaddy had a license issued September 21, 2000 is inconsistent with the rest of the material submitted by the State. If Gaddy was suspended by order on September 14, but had her license issued again on September 21, she was not in suspended status on October 5 unless there was another order of suspension after September 21. No such order appears in the record.
The State, in argument below, acknowledged that the Department's records were "a bit confusing, I understand, and they're piecing it together".[4] There was no way to get a printout of the screen the police saw on October 5.[5] The trial court acknowledged that it was impossible to tell whether the information received by the officers on October 5 was accurate or not, but concluded that accuracy was not a relevant issue. The court found the arrest lawful because the police had a "good faith belief that Gaddy's license was suspended.[6]
The issue in this case falls within the fact pattern of Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Under Whiteley, the validity of an arrest is not determined by an officer's good faith reliance on information supplied by a fellow officer. State v. Trenidad, 23 Wash.App. 418, 420, 595 P.2d 957 (1979). So too, the *122 validity of an arrest is not determined by an officer's good faith reliance on information supplied by a computerized database. State v. O'Cain, 108 Wash.App. 542, 555, 31 P.3d 733 (2001), quoting 2 Wayne R. LaFave, Search and Seizure § 3.5(e) at 277, n. 103(1996) ("`when a conclusory allegation... is obtained from some computerized compilation of information but no showing is made as to the basis of that allegation, it must be treated as if it were nothing more than an anonymous tip'"). In this case, there has been no showing of the basis for the information about Gaddy's suspended status that appeared on the mobile data terminal on October 5. The custodian's letter supports the allegation with an opinion purportedly based on "diligent search" but this does not supply a basis of knowledge because it is not backed up by orders showing how or why Gaddy's license got suspended after being issued on September 21.
The Majority at page 120 holds that the information police officers receive on their mobile data terminals from the Department of Licensing is presumptively reliable. The authority cited does not support this holding. In State v. Monson,[7] the question was whether the custodian of a particular record may testify in court to its factual contents in writing instead of appearing in person. Monson holds that a certified driving record is admissible in court, despite its hearsay nature, to prove the historical fact of an order of suspension or revocation where the defendant does not challenge its accuracy. Monson, 113 Wash.2d at 845-47, 784 P.2d 485. The information received on mobile data terminals is not certified, it is not clear that the information is based on an actual order, and here the defendant did challenge its accuracy. To declare that such information is presumptively reliable takes away an important incentive for accurate and prompt data entry, and leaves the driving public exposed to unjustified arrests. In addition, it relieves the State of its ordinary burden of proof in a warrantless arrest.
The Majority at page 120 suggests that Gaddy cannot prevail because she did not rebut the presumption of reliability by proving her license was valid on October 5. But the point is not that Gaddy's license really was, or was not, suspended on that date. Rather, the point is that the police "may not rely upon incorrect or incomplete information when they ... are at fault in permitting the records to remain uncorrected.'" State v. Mance, 82 Wash.App. 539, 543, 918 P.2d 527 (1996), quoting 2 Wayne LaFave, Search and Seizure § 3.5(d), at 272; see also O'Cain, 108 Wash.App. at 553, 31 P.3d 733 ("reliability of a stolen-vehicle report isn't established by an after-the-fact (postseizure) confirmation that the vehicle really was stolen").[8]
O'Cain identifies some questions that arise when a computerized database is consulted by police officers to determine probable cause for arrest:
whether any of the information inputted into the system is screened for reliability before being entered, whether anyone checks to make sure that errors are not made in inputting information, whether information is updated systematically, and (a closely related question) whether information discovered to be stale or inaccurate is removed from the system.
O'Cain, 108 Wash.App. at 555, 31 P.3d 733, quoting Judge Posner's comments in United States v. Ornelas-Ledesma, 16 F.3d 714, 717 (7th Cir.1994).
There should have been some testimony or other evidence here explaining why a person with a license issued on September 21 would still be shown by the computer as being in suspended status two weeks later. Whatever the explanation, the reliability of the information the police received in their mobile data terminalonce called into question, as it was here by the State's own records-should have been determined as a fact by the trial court, not as a matter of law by this court. See *123 Mance, 82 Wash.App. at 543-44, 918 P.2d 527.
That finding of fact is missing. The State did not carry its burden to establish that the police had reliable information. The motion to suppress should have been granted for lack of probable cause. The conviction should be reversed.
NOTES
[1] State v. Byrd, 83 Wash.App. 509, 512, 922 P.2d 168 (1996).
[2] RAP 2.5(a).
[3] State v. Hastings, 119 Wash.2d 229, 234, 830 P.2d 658 (1992).
[4] RCW 10.31.100(3)(e).
[5] State v. Graham, 130 Wash.2d 711, 724, 927 P.2d 227 (1996) (citations omitted).
[6] State v. Seagull, 95 Wash.2d 898, 906-07, 632 P.2d 44 (1981).
[7] State v. Mance, 82 Wash.App. 539, 541, 918 P.2d 527 (1996).
[8] See State v. Reeb, 63 Wash.App. 678, 681-82, 821 P.2d 84 (1992) (information provided by DOL need only be reasonably trustworthy, not absolutely accurate, to support adequate cause); Franks v. Delaware, 438 U.S. 154, 165, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (defendant may challenge warrant only on showing that police officer made deliberate false assertions in affidavit supporting probable cause).
[9] State v. Sandholm, 96 Wash.App. 846, 848, 980 P.2d 1292 (1999).
[10] Mance, 82 Wash.App. at 542, 918 P.2d 527.
[11] Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); Mance, 82 Wash.App. at 542, 918 P.2d 527.
[12] Whiteley, 401 U.S. at 568, 91 S.Ct. 1031.
[13] Mance, 82 Wash.App. at 542, 918 P.2d 527.
[14] State v. Wakeley, 29 Wash.App. 238, 241, 628 P.2d 835 (1981).
[15] Mance, 82 Wash.App. at 543, 918 P.2d 527.
[16] Mance, 82 Wash.App. at 545, 918 P.2d 527.
[17] Mance is not on point, despite the dissent's reliance upon it. There, the party challenging the presumptively reliable police bulletin proved that it was false, and that the police were at fault for failing to timely correct their record keeping. No similar showing has been made in this case. The DOL is at least as presumptively reliable as a citizen informant. It was Gaddy's burden to rebut that presumption. She failed to obtain a finding in her favor on that issue.
[18] RCW 46.01.040.
[19] 113 Wash.2d 833, 784 P.2d 485 (1989).
[20] Monson, 113 Wash.2d at 845, 784 P.2d 485 (quoting E. Cleary, McCormick on Evidence § 315 at 889 (3d ed.1984) (sworn records from DOL are admissible hearsay evidence)).
[21] Mance, 82 Wash.App. at 542, 918 P.2d 527
[22] 85 Wash.App. 339, 932 P.2d 1258 (1997)
[23] Perea, 85 Wash.App. at 343, 932 P.2d 1258.
[24] Perea, 85 Wash.App. at 343, 932 P.2d 1258.
[25] See, State v. Sandholm, 96 Wash.App. 846, 848, 980 P.2d 1292 (1999) (although police bulletin of stolen vehicle was not reliable, probable cause nevertheless existed for arrest because the report, in combination with the defendant's nervous demeanor and the physical condition of the auto that indicated that it had been stolen, was sufficient data to constitute probable cause).
[26] RAP 10.3, 10.4; State v. Camarillo, 54 Wash.App. 821, 829, 776 P.2d 176 (1989) (court will not review issues raised in pro se brief that contains no references to the record); State v. Berrysmith, 87 Wash.App. 268, 279, 944 P.2d 397 (1997), review denied, 134 Wash.2d 1008, 954 P.2d 277 (1998) (appellate court need not reach pro se argument that is unsupported by authority); State v. Marintorres, 93 Wash.App. 442, 452, 969 P.2d 501 (1999) (conclusory pro se supplemental brief that identified no specific legal issues not considered).
[1] January 30, 2001 Report of the Proceedings at 11, 37.
[2] Clerk's Papers at 8.
[3] Clerk's Papers at 13,14.
[4] January 30, 2001 Report of the Proceedings at 77.
[5] Report of Proceedings at 5.
[6] Conclusions of law, Clerk's Papers at 54.
[7] State v. Monson, 113 Wash.2d 833, 784 P.2d 485 (1989).
[8] For purposes of analyzing whether the police were at fault in permitting records of license suspension to remain uncorrected, the Department of Licensing should be viewed as a police agency because their records are indispensable to proof of the crime of driving while license suspended.