93 P.3d 872 (2004)
152 Wash.2d 64
STATE of Washington, Respondent,
v.
Juliet C. GADDY, Petitioner.
No. 73719-3.
Supreme Court of Washington, En Banc.
Argued March 11, 2004.
Decided July 8, 2004.
*873 Neil Martin Fox, Michael Paul Iaria, Cohen & Iaria, Seattle, Alfoster Garrett, Jr., Shoreline, for Petitioner.
Norm Maleng, King County Prosecutor, Daniel Jason Clark, Deputy, Seattle, for Respondent.
Erika G.S. Uhl, Washington Attorney General's Office, Seattle, for Amicus Curiae (Department of Licensing).
ALEXANDER, C.J.
Juliet Gaddy was found guilty of possession of a controlled substance. The substance, cocaine, was discovered in Gaddy's car when the police searched it incident to her arrest for driving while license suspended. The Court of Appeals affirmed Gaddy's conviction, concluding that information the arresting officer received from the Department of Licensing (DOL) was presumptively reliable and that the arresting officer, therefore, had probable cause to arrest Gaddy. We affirm the Court of Appeals.

I

The Arrest
In the early morning hours of October 5, 2000, a vehicle driven by Juliet Gaddy was stopped by two police officers of the City of Seattle. The stop was based on the officers' perception that Gaddy failed to signal when making a right turn. Because Gaddy was unable to provide the officers with a valid *874 driver's license, one of them asked her for her name and birth date so that he could verify the status of her driver's license on a mobile data terminal (MDT) located within the police vehicle. One of the police officer's testified that the MDT "returned with DWLS-3, which is Driving While License Suspended, Third Degree, which is a criminal offense." Suppression Hearing Record of Proceedings (Jan. 30, 2001) at 11. Based on this information, the officers arrested Gaddy for driving a motor vehicle while license suspended.
In a search of Gaddy's vehicle incident to the arrest, the police officers found a purse in which there was a substance they believed was cocaine. A field test was conducted which indicated that the substance was cocaine. When the officers confronted Gaddy about what they had found, Gaddy denied that the purse in which the substance was found belonged to her. Gaddy then informed the police officers, for the first time, that she had a driver's license on her person. The license, which was in one of Gaddy's pants pockets, was retrieved by the officers. Gaddy was eventually charged in King County Superior Court with one count of possession of a controlled substance, to wit: cocaine. She was not charged with driving while license suspended.[1]

The Suppression Hearing
Gaddy filed a motion to suppress the cocaine, arguing that the search conducted by the officers was invalid because they lacked probable cause to arrest her. Specifically, Gaddy contended that the DOL information was incorrect and that the erroneous information did not provide probable cause for her arrest. In support of her argument, Gaddy maintained that her driver's license was not suspended at the time of her arrest. At a hearing on her suppression motion, Gaddy introduced a copy of an abstract of her driving record which revealed that a driver's license had been issued to her on September 21, 2000.
The State countered by introducing two documents that it believed established that Gaddy's driver's license was in a state of suspension on October 5, 2000, the date of her arrest. One of the documents was a copy of a suspension order which indicated that Gaddy was to stop driving on September 14, 2000, due to the cancellation of her insurance coverage. The other document was a letter from DOL's custodian of records. It stated that on October 5, 2000, the day of Gaddy's arrest, Gaddy had not reinstated her driving privilege. The latter document indicated that a license was issued to Gaddy on September 21, 2000. It did not, however, state whether another suspension order had been entered during the period between September 21, 2000, and October 5, 2000.
The trial court acknowledged that Gaddy's driving record was confusing but concluded that the accuracy of Gaddy's record was not relevant. In its view, the pertinent issue was whether the arresting officers had a reasonable basis to believe that Gaddy was committing the crime of driving with a suspended license at the time they placed her under arrest. It ruled that the combination of Gaddy's inability to produce a valid driver's license at the time of questioning and the officers' receipt of information from the MDT, provided the officers with probable cause to arrest Gaddy for driving while license suspended. It, therefore, denied Gaddy's suppression motion.

The Trial and Appeal
Following a jury trial in King County Superior Court, Gaddy was convicted of the charge of possession of a controlled substance. She was thereafter sentenced to serve two months in jail. Gaddy appealed her conviction to Division One of the Court of Appeals, claiming only that the arresting officers did not have probable cause to arrest her for driving with a suspended driver's license because the DOL information that the officers received via their MDT was not reliable. See Appellant's Opening Br. at 14 ("Here, the State offered no other evidence as to the reliability of the records regarding license suspensions, i.e., ... testimony regarding the accuracy of such records."). The *875 Court of Appeals rejected this argument and affirmed Gaddy's conviction reasoning that the information from DOL was "presumptively reliable." State v. Gaddy, 114 Wash.App. 702, 708, 60 P.3d 116 (2002), review granted, 150 Wash.2d 1001, 77 P.3d 651 (2003). It also noted that probable cause for Gaddy's arrest was supported not only by DOL information that was received over the MDT but also by the fact that Gaddy could not produce a driver's license prior to her arrest and that, according to testimony of the arresting officers, her "demeanor was uncooperative and flighty during the encounter." Id.

II
Gaddy contends here, as she did at the Court of Appeals, that the trial court erred in not granting her suppression motion. In support of this contention, she asserts that her arrest was based on unreliable DOL information that does not provide a basis for a determination that there was probable cause to arrest her for driving while license suspended. Because Gaddy does not dispute the findings of fact the trial court entered in support of its order denying suppression, the question before us is whether the trial court's conclusion is supported by its findings. This is a question of law which we review de novo. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999).
Warrantless searches are per se unreasonable. State v. Parker, 139 Wash.2d 486, 496, 987 P.2d 73 (1999). Exceptions to the strict warrant requirement rule are limited and narrowly drawn. One exception is a search incident to arrest. Under article I, section 7 of the Washington State Constitution, a lawful custodial arrest is a constitutionally required prerequisite to any search incident to arrest.
Per RCW 10.31.100(3)(e), police officers may arrest a person without a warrant if they have probable cause to believe that the person is driving with a suspended driver's license. The existence of probable cause is determined by an objective standard. State v. Graham, 130 Wash.2d 711, 724, 927 P.2d 227 (1996). Probable cause exists when the arresting officer is aware of facts or circumstances, based on reasonably trustworthy information, sufficient to cause a reasonable officer to believe a crime has been committed. State v. Terrovona, 105 Wash.2d 632, 643, 716 P.2d 295 (1986). At the time of arrest, the arresting officer need not have evidence to prove each element of the crime beyond a reasonable doubt. The officer is required only to have knowledge of facts sufficient to cause a reasonable person to believe that an offense had been committed. State v. Knighten, 109 Wash.2d 896, 903, 748 P.2d 1118 (1988).
The question in this case is whether the DOL information that was obtained by the arresting officer via the MDT located in the police vehicle provided the officers with probable cause to arrest Gaddy for driving with a suspended driver's license. Gaddy cites the so-called "fellow officer rule" and contends that the DOL information should be treated as if it were information such as a police bulletin or "`hot sheet'" that is generated by a police agency. State v. Mance, 82 Wash.App. 539, 542, 918 P.2d 527 (1996). Under this rule, an arrest on the basis of such information is justified only if the police agency issuing the information or bulletin has sufficient information for probable cause. If the issuing agency or officer lacks probable cause, then the arresting officer also lacks probable cause.
Gaddy's reliance on the fellow officer rule is not justified here. We say that because the arresting officers relied on information disseminated by DOL, not information from a police agency or other officer. We reach that conclusion because we are satisfied that DOL is not a police agency. In reaching this determination we take note of the fact that in 1965 the legislature severed the licensing function that DOL now performs from the responsibilities of the Washington State Patrol. LAWS OF 1965, ch. 156, § 2. This resulted in the separation of the regulation of motor vehicle drivers' licenses from the law enforcement functions that the state patrol carries out. The fact that DOL and law enforcement agencies often work cooperatively, does not detract from the point that the duties and functions of DOL *876 are separate from those performed by the law enforcement agencies of this state.
What then is the proper test to apply in determining whether or not the information provided by DOL furnished probable cause for Gaddy's arrest? In our view, it is the Aguilar-Spinelli test, a test that is applied to police informants.[2] Under that test, an informant's tip can furnish probable cause for an arrest if the State establishes (1) the basis of the informant's information and (2) the credibility of the informant or the reliability of the informant's information. State v. Cole, 128 Wash.2d 262, 287, 906 P.2d 925 (1995). To satisfy both parts of the Aguilar-Spinelli test, the State must prove the underlying circumstances which the trier of fact "may draw upon to conclude the informant was credible and obtained the information in a reliable manner." State v. Vickers, 148 Wash.2d 91, 112, 59 P.3d 58 (2002).
The first prong of the test relates to the informant's basis of knowledge. State v. Smith, 102 Wash.2d 449, 455, 688 P.2d 146 (1984). Here, it is undisputed that the informant, DOL, had a basis to know whether Gaddy's driver's license was suspended on October 5, 2000. DOL, as we have noted above, is the agency which regulates drivers' licenses in this state. Its authority to do so stems from RCW 46.01.030, which provides that DOL "shall be responsible for administering and recommending the improvement of the motor vehicle laws of this state relating to: (1) driver examining and licensing; [and] ... (3) driver records." Another function of DOL is to suspend and revoke drivers' licenses. See, e.g., RCW 46.20.291 (which sets forth the grounds on which DOL may suspend a person's driver's license); RCW 46.29.280 (upon notification or cancellation of required motor vehicle insurance, DOL is required to suspend or revoke the person's driver's license). Therefore, it is apparent to us that DOL has firsthand knowledge of an individual's driving status.
The second part of the Aguilar-Spinelli test requires an examination of the credibility of the informant or the reliability of the informant's information. Smith, 102 Wash.2d at 455, 688 P.2d 146. That is the prong that is in contention here.[3] If the identity of an informant is known  as opposed to being anonymous or professional  the necessary showing of reliability is relaxed. See State v. Huft, 106 Wash.2d 206, 211, 720 P.2d 838 (1986). This is so because there is less risk of the information being a rumor or irresponsible conjecture which may accompany anonymous informants. State v. Northness, 20 Wash.App. 551, 557, 582 P.2d 546 (1978). Also, an identified informant's report is less likely to be marred by self-interest. Citizen informants are deemed presumptively reliable. State v. Wakeley, 29 Wash.App. 238, 241, 628 P.2d 835, review denied, 95 Wash.2d 1032 (1981).
We are satisfied that DOL should be accorded the status of a citizen informant. We reach this conclusion because DOL is governed by extensive statutes and provisions and the Washington Administrative Code, which establishes its reliability. There are many statutes in place that mandate DOL to maintain current and accurate information. See, e.g., RCW 46.20.270 (court must notify DOL within 10 days of conviction of offense requiring suspension or revocation of person's driver's license); RCW 46.20.308(6)(e) (police officers are required to notify DOL by sworn report of an arrest for driving under the influence within 72 hours of that arrest), (7). Furthermore, there are strict standards in place regarding DOL's authorization to suspend a person's driver's *877 license and how it reinstates driving privileges when it is appropriate to do so. See, e.g., RCW 46.20.291 (numerated list of grounds in which DOL may suspend a person's driver's license); RCW 46.20.265(3) (when given notification by a court to do so, DOL must immediately reinstate a person's driving privileges). Such standards support the presumption that the DOL records are accurate and reliable. See RCW 46.65.030 (DOL abstract of person's driving record is presumed accurate, and it is the defendant's burden to prove its inaccuracy).
For the reasons we have set forth above, we conclude that the DOL records are presumptively reliable. We conclude, additionally, that Gaddy failed to rebut this presumption. At her suppression hearing, Gaddy argued only that her driving records were inaccurate. To prevail on a reliability challenge, it would have been necessary for Gaddy to make at least a prima facie showing that accuracy of the DOL records are affected by systemic problems in maintaining accurate and reliable records of the millions of drivers it oversees. Gaddy did not attempt to make such a showing here. The fact that one driving record may have been inaccurate, if that is the case here, does not establish that DOL records as a whole are unreliable.

III
Under the Aguilar-Spinelli test, information from DOL is presumptively reliable. That presumption has not been overcome. Thus, the DOL information concerning Gaddy's record that was obtained via an MDT located in the arresting police officer's vehicle provided probable cause to arrest Gaddy for driving with a suspended license.
Therefore, we affirm the Court of Appeals' decision upholding Gaddy's conviction for possession of a controlled substance.
WE CONCUR: JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ.
NOTES
[1] See RCW 46.20.345, which provides that a person is guilty of a gross misdemeanor if the person operates a motor vehicle while his or her driver's license is suspended.
[2] The Aguilar-Spinelli test derives from two United States Supreme Court cases: Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Although the United States Supreme Court eventually rejected the Aguilar-Spinelli test for the "totality-of-the-circumstances" test in Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), we still adhere to the Aguilar-Spinelli informant test. See State v. Jackson, 102 Wash.2d 432, 443, 688 P.2d 136 (1984).
[3] We note that the record does not contain evidence of DOL's reliability or its lack thereof. That is because the issue of DOL's reliability was raised only at the appellate level. See Gaddy, 114 Wash.App. at 705, 60 P.3d 116 (Gaddy "contends that the license status information the police received on their mobile data terminals from the DOL was not reliable. Although Gaddy did not raise this issue to the trial court, because the issue implicates her constitutional right of privacy... we will resolve it.").