# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49998-3-II |
| Respondent, | |
| v. | |
| LARRY EUGENE SMITH, JR., | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Larry Eugene Smith, Jr. appeals his conviction for unlawful possession of a stolen vehicle, arguing that the trial court erred in denying his CrR 3.6 motion to suppress evidence discovered when a police officer stopped him. Because the police officer's encounter with Smith was a valid investigative stop, we affirm.

## FACTS[1]

An apartment complex resident called 911 to report a suspicious black and maroon Dodge Ram truck in the parking lot with three occupants inside who appeared to be casing the complex. The 911 caller reported that the subjects in the Dodge truck were currently parked in the parking lot in front of his apartment in Building E. The 911 caller further stated that he believed that the occupants of the truck were responsible for recent vehicle prowls. The 911 dispatcher verified the

---

[1] The following facts are taken primarily from the trial court's unchallenged CrR 3.6 findings of fact, which are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

caller's name, which he reported as Jay Johnson; the caller's location; and the caller's phone number. It was later learned that the caller did not use his real name.

Pierce County Sheriff's Deputy Kohl Stewart responded to the call. He arrived at the apartment complex approximately 10 minutes after being dispatched. Deputy Stewart was familiar with the apartment complex because there had been a history of stolen cars and vehicle prowls at the complex.

When he arrived at the apartment complex, Deputy Stewart located a black and maroon Dodge Ram truck that had moved from Building E and was backing into a parking spot near Building H of the apartment complex. The truck matched the description provided by the 911 caller.

Deputy Stewart parked his patrol car approximately 10-15 feet away from the Dodge truck, but did not activate the emergency lights or siren on his patrol car, and he did not park his patrol car in a way that would have prevented the driver of the truck from pulling out of the parking spot. Deputy Stewart got out of his patrol car, walked towards the truck, and saw that there were three occupants as the 911 caller had reported.

Deputy Stewart approached the driver side of the truck. Because the truck was idling loudly, Deputy Stewart asked the driver, Smith, to turn off the engine. Deputy Stewart then asked Smith what he was doing at the complex. Smith told the officer he was there to talk to someone. Deputy Stewart asked for Smith's name and then returned to his patrol car. This contact lasted for approximately two minutes.

Deputy Stewart ran Smith's name and the truck's license plate number through his computer system in his patrol car. The deputy learned Smith's license was suspended and the truck was previously reported stolen.

Deputy Stewart retuned to the truck and asked Smith to step out of the truck. Smith refused. A second deputy arrived and assisted Deputy Stewart with removing Smith. Smith actively resisted the officers and was eventually tased.

The State charged Smith with unlawful possession of a stolen vehicle and resisting arrest. Smith filed a motion to suppress all evidence, arguing that the initial encounter between him and Deputy Stewart was unlawful.

The trial court denied the motion, concluding that:

3) A known citizen informant who provided his name, address and phone number, which was verified by 911 dispatch, provided the basis for the deputy's contact with the defendant.

4) This known citizen's tip regarding suspected criminal activity was presumptively reliable.

5) The 911 caller provided sufficient facts that allowed the deputy to believe, based upon a totality of the circumstances, that the defendant and other occupants of the Dodge Ram truck were engaged in criminal activity.

6) The deputy observed the vehicle in motion, which was consistent with possible criminal behavior, and was a corroborating factor of criminal activity.

7) The deputy conducted a valid stop of the defendant pursuant *Terry v. Ohio*, supra.

8) The defendant's motion to suppress evidence is denied. That evidence is admissible at the defendant's trial.

Clerk's Papers (CP) at 50-51.

The trial court dismissed the resisting arrest charge and the matter proceed to a stipulated facts trial on the remaining charge. The trial court found Smith guilty of unlawful possession of a stolen vehicle. Smith appeals.

ANALYSIS

Smith contends the trial court erred when it failed to suppress evidence following an unconstitutional seizure. He contends Deputy Stewart acted on an unreliable citizen informant tip and, therefore, seized him without the reasonable suspicion required by *Terry*.[2] We disagree.[3]

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[3] The State argues that the deputy's initial contact with Smith would be more analogous to a social contact than a *Terry* stop. Our review, however, is focused on the trial court's conclusions of law. *State v. Roden*, 179 Wn.2d 893, 898, 321 P.3d 1183 (2014). The trial court specifically concluded the stop was a *Terry* stop. We analyze the issue accordingly.

Nevertheless, we note that a social contact "occupies an amorphous area in our jurisprudence, resting someplace between an officer's saying 'hello' to a stranger on the street and, at the other end of the spectrum, an investigative detention." *State v. Harrington*, 167 Wn.2d 656, 664, 222 P.3d 92 (2009). Police officers may "engage persons in conversation and ask for identification even in the absence of an articulable suspicion of wrongdoing." *State v. Young*, 135 Wn.2d 498, 511, 957 P.2d 681 (1988). Moreover, police officers may run computer checks of license plate numbers without any suspicion of criminal activity. *State v. McKinney*, 148 Wn.2d 20, 60 P.3d 46 (2002); *see also State v. Jorden*, 160 Wn.2d 121, 130, 156 P.3d 893 (2007) (law enforcement may "randomly run checks of the license plates" of parked vehicles outside motels).

Here, when Deputy Stewart approached the truck, he asked Smith his name and what he was doing at the apartment complex. The deputy then ran the truck's license plate and learned the truck was stolen. These actions alone support admission of evidence that Smith unlawfully possessed a stolen vehicle. As such, we note that additional grounds exist to affirm. *See State v. Norlin*, 134 Wn.2d 570, 582, 951 P.2d 1131 (1998) (we may affirm a trial court's decision as to the admissibility of evidence on any basis supported by the record).

A.    STANDARD OF REVIEW

We review a trial court's legal conclusions following a motion to suppress de novo. *State v. Roden*, 179 Wn.2d 893, 898, 321 P.3d 1183 (2014). We also review whether the conclusions of law flow from the findings of fact. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014).

B.    INVESTIGATIVE STOP

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit a warrantless search and seizure unless the State demonstrates that one of the narrow exceptions to the warrant requirement applies. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Washington allows a few jealously and carefully drawn exceptions to the warrant requirement, which includes *Terry* investigative stops. *Garvin*, 166 Wn.2d at 249. The State bears the burden of demonstrating that a warrantless seizure falls into a narrow exception to the rule. *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010).

"To conduct a valid *Terry* stop, an officer must have 'reasonable suspicion of criminal activity based on specific and articulable facts known to the officer at the inception of the stop.' " *State v. Weyand*, 188 Wn.2d 804, 811, 399 P.3d 530 (2017) (quoting *State v. Fuentes*, 183 Wn.2d 149, 158, 352 P.3d 152 (2015)). We look to the totality of circumstances known to the officer in deciding whether an officer had a reasonable suspicion that criminal conduct has occurred or is about to occur. *Weyand*, 188 Wn.2d at 811. When the activity is consistent with criminal activity, although also consistent with noncriminal activity, it may justify a brief detention. *Id.* And " '[t]he courts have repeatedly encouraged law enforcement officers to investigate suspicious situations.' " *State v. Lee*, 147 Wn. App. 912, 918, 199 P.3d 445 (2008) (alterations in original) (quoting *State v. Mercer*, 45 Wn. App. 769, 775, 727 P.2d 676 (1986)), *review denied*, 166 Wn.2d 1016 (2009).

"It is generally recognized that crime prevention and crime detection are legitimate purposes for investigative stops or detentions." *State v. Kennedy*, 107 Wn.2d 1, 5-6, 726 P.2d 445 (1986).

An informant's tip can provide police with reasonable suspicion to justify an investigatory *Terry* stop if the tip possesses sufficient " 'indicia of reliability' " under the totality of the circumstances. *State v. Sieler*, 95 Wn.2d 43, 47, 621 P.2d 1272 (1980) (quoting *Adams v. Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972)). When deciding whether this indicia of reliability exists, the courts will generally consider a showing of (1) the informant's reliability, or (2) some corroborative observation made by the officer, that "shows either (a) the presence of criminal activity or (b) that the informer's information was obtained in a reliable fashion." *State v. Z.U.E.,* 183 Wn.2d 610, 618, 352 P.3d 796 (2015). If relying on corroboration, the corroboration must be of more than just innocuous facts such as appearance. *Id*. at 618-19. The existing standard does not require all factors to establish indicia of reliability. *Id. at* 620.

1.      Reliability of the Informant

"Citizen informants are deemed presumptively reliable." *State v. Gaddy*, 152 Wn.2d 64, 73, 93 P.3d 872 (2004).[4] "[N]eighbors' information does not require a showing of the same degree of reliability as the informant's tip since it comes from 'citizen' rather than 'professional' informants." *Kennedy*, 107 Wn.2d at 8. Moreover, a citizen informant reporting a crime can be "inherently reliable for purposes of a *Terry* stop, even if calling on the telephone rather than

---

[4] The dissent states that the Supreme Court in *Gaddy* was referring to information obtained from the Department of Licensing (DOL) and "not a citizen informant." Dissent at 1. We disagree with the dissent. The Supreme Court first held that citizen informants are presumptively reliable and then held that "DOL should be accorded the status of a citizen informant." *Gaddy*, 152 Wn.2d at 73.

speaking to the police in person." *State v. Conner*, 58 Wn. App. 90, 96, 791 P.2d 261, *review denied*, 115 Wn.2d 1020 (1990).

Here, the citizen informant called 911 and reported a suspicious black and maroon Dodge Ram truck with three occupants inside who appeared to be casing the apartment complex where the informant lived. The 911 caller stated that he believed that the occupants of the truck were responsible for the recent vehicle prowls. The 911 dispatcher recorded the caller's name, location, and phone number. Although the truck was reportedly parked outside the informant's building when the informant first called, and had moved by the time Deputy Stewart arrived, the truck was still in the apartment complex.

We follow our Supreme Court's guidance in *Gaddy* and presume the citizen informant in this case was reliable. *Gaddy*, 152 Wn.2d at 73. The 911 caller described the truck outside his apartment in detail, the number of occupants, and expressed his concern that they were involved in the recent vehicle prowls. While the 911 caller provided a false name when asked, the caller still provided his phone number and location, which the 911 dispatcher verified. There is no evidence that the 911 caller's information was marred by self-interest. And when Deputy Stewart arrived, the truck was still in the apartment complex parking lot with the same number of occupants as reported by the 911 caller. These facts support that the 911 caller's tip contained sufficient indicia of reliability.

Smith argues that the 911 caller's tip lacked sufficient indicia of reliability, relying mainly on *Z.U.E.* In *Z.U.E.*, the Court held that an informant's tip was unreliable because the informant failed to allege objective facts indicating criminal activity. 183 Wn.2d at 622-23. The informant alleged facts suggesting the suspect was a minor in possession of a firearm, but the informant failed

to explain how she knew the suspect was a minor, and simply "carrying a gun is not automatically a crime." *State v. Z.U.E.*, 178 Wn. App. 769, 786, 315 P.3d 1158 (2014), *aff'd*, 183 Wn.2d 610 (2015).

The record here establishes the informant's reliability. Unlike the informant in *Z.U.E.*, the caller here provided the 911 dispatcher a detailed description of the truck and specifically stated that the truck was outside the caller's Building E. The 911 caller also stated that there were three occupants in the truck who were acting suspiciously and appeared to be casing the apartment complex parking lot in an area where there were prior vehicle prowls. These facts present a more compelling case for reliability than in *Z.U.E.*

It is well settled that the reasonableness of police action when making an investigatory stop must be reviewed on a case by case basis. *See State v. Lesnick*, 84 Wn.2d 940, 944, 530 P.2d 243 ("*Terry* . . . emphasize[s] that no single rule can be fashioned to meet every conceivable confrontation between the police and citizen. Evaluating the reasonableness of the police action and the extent of the intrusion, each case must be considered in light of the particular circumstances facing the law enforcement officer."), *cert denied*, 423 U.S. 891 (1975). We conclude the 911 caller was a reliable citizen informant under the circumstances here.

2.      Corroborative Observation Made By the Officer

While not a required factor, courts also consider whether police corroborated information from the informant's tip. *Z.U.E.,* 183 Wn.2d at 618; *Lee*, 147 Wn. App. at 918. Officers can directly corroborate a tip by observing circumstances that suggest criminal activity. *State v. Saggers*, 182 Wn. App. 832, 841, 332 P.3d 1034 (2014).

Here, the 911 caller reported suspicious behavior by three individuals inside a black and maroon Dodge Ram truck at the caller's apartment complex near his building, Building E. The caller also reported that the individuals appeared to be casing the area and may have been involved in prior vehicle prowls in the area.

Deputy Stewart arrived at the apartment complex approximately 10 minutes after being dispatched. When Deputy Stewart arrived, he observed the black and maroon Dodge Ram truck with three occupants backing into a parking spot near Building H of the apartment complex. Movement by the vehicle corroborates the caller's report that the occupants of the vehicle appeared to be casing the area. Facts that appear innocuous to an average person may appear suspicious to a police officer in light of past experience. *State v. Moreno*, 173 Wn. App. 479, 493, 294 P.3d 812 (2013). Also, Deputy Stewart was familiar with the apartment complex because there had been a history of stolen cars and vehicle prowls at the complex. Accordingly, we conclude sufficient indicia of reliability is also shown by police corroboration.[5]

---

[5] We note that courts may also consider whether the information was obtained in a reliable fashion. *Lee*, 147 Wn. App. at 918. Here, the informant called 911 from his apartment complex and the 911 dispatcher was able to verify the caller's phone number and location. Deputy Stewart was aware the information was reported through a 911 call and he had no reason to doubt the informant's reliability. Thus, we conclude the information was obtained by reliable means. *See Navarette v. California*, 572 U.S. 393, 134 S. Ct. 1683, 1689-90, 188 L. Ed. 2d 680 (2014) ("[a] 911 call has some features that allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity. . . . Given the foregoing technological and regulatory developments . . . a reasonable officer could conclude that a false tipster would think twice before using such a system.").

No. 49998-3-II

CONCLUSION

Under the totality of the circumstances, the indicia of reliability in this case demonstrated sufficient reasonable suspicion to support Deputy Stewart's investigatory *Terry* stop of Smith. The officer's observations corroborated suspicious activity and the citizen informant's 911 tip demonstrated sufficient indicia of reliability. We conclude the trial court did not err in denying Smith's CrR 3.6 motion to suppress evidence.[6]

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

I concur:

Melnick, J

---

[6] Smith also states, without argument, that there was insufficient evidence to support his conviction for unlawful possession of a stolen vehicle without the improperly admitted evidence. Because we hold the trial court did not err in denying Smith's motion to suppress, we do not address this argument.

MAXA, C.J. (dissenting) – I disagree with the majority opinion's analysis of the unknown 911 caller's reliability and the officer's corroborative observations. A proper analysis shows that under the totality of the circumstances, the unknown caller's report and the officer's observations were not sufficient to justify a *Terry*[7] stop. Therefore, I dissent.

First, I disagree with the majority's application of a rule that citizen informants are presumptively reliable. I do not believe that such a presumption exists for named but otherwise unknown callers to law enforcement. The Supreme Court in *State v. Z.U.E.*, 183 Wn.2d 610, 352 P.3d 796 (2015) did not apply such a presumption to a 911 caller who gave her name. Instead, the court determined whether the totality of the circumstances established her reliability. *Id*. at 618-23. The court concluded that the citizen informant in that case was not reliable based on the circumstances surrounding her report that she had observed unlawful activity. *Id*. at 622-23.

Other courts have not presumed that a named but unknown citizen informant was presumed to be reliable. The court in *Z.U.E.* cited with approval *State v. Sieler*, in which the court found that the father of a high school student who observed a drug sale in a school parking lot lacked sufficient indicia of reliability even though he provided his name. 95 Wn.2d 43, 44-45, 47-48, 621 P.2d 1272 (1980). The court in *Sieler* did not apply a presumption of reliability for a citizen who gave a report in person. *See id.* Similarly, in *State v. Hopkins* this court refused to apply a presumption of reliability to a citizen informant when the State did not otherwise produce any evidence that the informant was reliable. 128 Wn. App. 855, 863-64, 117 P.3d 377 (2005).

---

[7] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

The majority cites *State v. Gaddy*, 152 Wn.2d 64, 73, 93 P.3d 872 (2004). But that case involved information that officers received from the Department of Licensing, not an unknown citizen informant. *Id*. at 70-73. The majority also cites *State v. Kennedy*, 107 Wn.2d 1, 8, 726 P.2d 445 (1986). But the court in *Kennedy* did not apply a presumption of liability; it stated only that citizen informants do not require the same degree of reliability as professional informants. *Id*.

Second, the majority ignores that even if the caller here had some indicia of reliability, he provided no factual basis for his allegation that the car was "casing" the apartment complex. The absence of any factual basis was the key to the court's holding in *Z.U.E.* 183 Wn.2d at 622-23. In that case, the 911 caller stated that she saw a 17-year-old female hand off a gun to a man. *Id*. at 614. The court noted that if the female had been 17 years old, her possession of a gun would have been unlawful. *Id*. at 622. But the court emphasized that investigating officers had no way of evaluating the informant's statement regarding the female's age.

> [B]ecause the caller did not offer any factual basis in support of that allegation, the officers could not ascertain how the caller knew the girl was 17 rather than, say, 18 years old. . . . Although we presume that [the informant] reported honestly, the officers had no basis on which to evaluate the accuracy of her estimation. We follow our holding in *Sieler* and conclude that this 911 caller's assertion cannot create a sustainable basis for a *Terry* stop.

*Id*. at 622-23.

The same problem exists here. The caller stated only that a truck appeared to be "casing" the apartment complex parking lot and that he believed that the occupants were responsible for recent vehicle prowls in the complex. But the caller here did not offer any factual basis to support his allegations. He did not describe what the truck was doing. He did not explain why

he believed that the truck's occupants were vehicle prowlers. Therefore, the officers could not ascertain how the caller knew that the truck was "casing" rather than simply looking for a particular apartment or a parking space.

The key fact here, as in *Z.U.E.*, is that the caller was not an eyewitness to an obvious crime. The analysis would be different if the caller had witnessed the truck's occupants actually breaking into another vehicle. In that situation, the factual basis would be his observation of a crime. But here the caller only observed some ambiguous behavior that he *interpreted* as a precursor to criminal activity. Like a person's age in *Z.U.E.*, whether a vehicle is casing an area is a very subjective determination. When a caller merely *believes* that a crime might be committed based on an ambiguous and subjective observation and there is no information about the basis for the caller's belief, under *Z.U.E.* the caller's assertion cannot create a sustainable basis for a *Terry* stop. *Z.U.E.*, 183 Wn.2d at 622-23.

The majority emphasizes the fact that the caller here accurately described the truck, the fact there were three people inside the truck, and the location of a truck in the apartment complex parking lot. But the fact that an informant accurately described innocuous facts is not sufficient to provide a factual basis for the informant's allegation that a crime was being committed. *See id*. at 618-19.

Third, I disagree with the majority's conclusion that the officer sufficiently corroborated the informant's tip. To justify a *Terry* stop when the informant's reliability has not been established, the court in *Z.U.E.* stated that an officer must make some corroborative observation that shows "the presence of criminal activity." *Id*. at 618. "These corroborative observations do not need to be of particularly blatant criminal activity, but they must corroborate more than just

innocuous facts." *Id.* Here, the officer's only observation before making the *Terry* stop was of the truck backing into a parking spot. Simply backing into a parking spot does not show or even suggest the presence of criminal activity, even when the truck had been seen in a different part of the parking lot. This is the type of innocuous activity that cannot serve as corroboration. *See Id.* at 618.

In summary, all the investigating officer knew was that an identified but unknown caller *believed* that a truck was "casing" an apartment complex and that he *believed* that the truck's occupants might be responsible for recent vehicle prowls. But the caller's report was unsupported by facts; he provided absolutely no basis for his belief. And the officer did not observe any activity that would suggest that the truck was "casing" as opposed to merely parking. Under these circumstances, a *Terry* stop was not justified.

Under the majority's analysis, any vehicle driving through an apartment complex would be subject to a *Terry* stop simply because a caller alleged without any factual basis that the occupants were up to no good. I do not believe that *Z.U.E.* supports such a conclusion. I would hold that the officer's *Terry* stop here was unlawful and therefore that the evidence obtained as a result of that stop should have been suppressed.

Maxa, C.J.