# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THOMAS BARES,<br><br>    Appellant,<br><br>  v.<br><br>CITY OF FEDERAL WAY,<br><br>    Respondent. | No. 87055-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Thomas Bares sued the City of Federal Way (City) for false arrest, false imprisonment, and negligence based on his warrantless arrest. Bares appeals the trial court's order dismissing his case on summary judgment. We affirm.

I

On October 4, 2021, Joshua Prince reported a residential burglary at his home to the Pierce County Sheriff's Department. Pierce County Sheriff's Deputy David Sutherland responded to the incident. According to Prince, he arrived home and his garage was open with several items missing, including at least four chainsaws with unknown serial numbers. Deputy Sutherland provided a theft inventory list and suggested that Prince periodically check the website OfferUp to see if his items were

listed.  Prince completed a theft inventory sheet with the serial numbers of the missing items.

On October 6, 2021, Prince contacted his friend, Officer Josh McConnell, with the Federal Way Police Department (FWPD).  Prince sent Officer McConnell photos of the chainsaw on OfferUp that had the same aftermarket features as his missing chainsaw.  One of the photos on OfferUp showed the last four digits of the serial number, which matched the last four digits of Prince's stolen chainsaw.

The seller of the chainsaw was Thomas Bares.  FWPD had records of a previous contact with Bares for trying to sell a stolen chainsaw on OfferUp, but no charges were brought.  Officer McConnell contacted Bares through OfferUp and offered to purchase the chainsaw.  Officer McConnell and Bares arranged to meet at a Lowes parking lot at 7 p.m. that evening.

Members of FWPD, including members of the special investigations unit (SIU) and special operations unit, held a briefing before the arranged meeting.  The plan was for SIU Detective Justin Antholt to appear as an undercover buyer and meet with Bares to purchase the chainsaw.  The remainder of the officers were to serve as the surveillance and arrest team.

Detective Antholt met with Bares in the parking lot.  Detective Antholt observed that the aftermarket features and the serial number on the chainsaw matched Prince's stolen chainsaw.  Bares told Detective Antholt that he had the chainsaw for a couple of years.  Detective Antholt negotiated the price with Bares and eventually completed the purchase and left.

Detective Prince, who observed the sale, advised the arresting officers that it appeared that Bares had a handgun on his person. Detective Antholt and Officer McConnell then conducted a high risk stop on Bares in the Lowes parking lot. According to Bares, once he got into his car, he observed multiple police cars with the lights on approaching him. He said officers pulled multiple guns and commanded him to get out of his car. Bares was placed in the back of a police cruiser.

Officers read Bares his Miranda[1] rights. Bares told officers that he purchased the chainsaw the night before from a man in SeaTac named Denie. He told officers that he regularly purchased chainsaws, fixed the chainsaws in his mother's garage, and sold them on OfferUp. Officers asked for permission to search his mother's garage, which he permitted contingent on his mother's consent. Officers found six chainsaws in the garage, but after running the serial numbers, none of them appeared to be stolen.

Bares was placed into an interview room at FWPD. Bares consented to officers searching his phone. Officers released Bares but said that they could not return the phone to him until at least the next day so that they could search it. Bares was released from the police station about 10:30 p.m. and was never charged.

Bares sued the City of Federal Way asserting claims of false arrest, false imprisonment, and negligence in the execution of a warrantless arrest. The trial court granted the City's motion for summary judgment and dismissed Bares's case.

Bares appeals.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

II

Bares assigns error to the trial court's order granting summary judgment. Bares contends that summary judgment was not appropriate because the arresting officers did not have probable cause for the arrest.[2] We disagree.

A

We review summary judgment orders de novo and perform the same inquiry as the trial court. Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). We view all facts and reasonable inferences in the light most favorable to the nonmoving party. Owen, 153 Wn.2d at 787. Summary judgment is proper if the record before the trial court establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

"The gist of an action for false arrest or false imprisonment is the unlawful violation of a person's right of personal liberty or the restraint of that person without legal authority." Bender v. City of Seattle, 99 Wn.2d 582, 591, 664 P.2d 492 (1983). The existence of probable cause that a crime has been committed is a complete defense to an action for false arrest and false imprisonment. McBride v. Walla Walla County, 95 Wn. App. 33, 38, 975 P.2d 1029 (1999). We determine whether there was probable cause under an objective standard. State v. Gaddy, 152 Wn.2d 64, 70, 93 P.3d 872 (2004). "Probable cause exists when the arresting officer is aware of facts or

_____

[2] Bares initially asserts that the City was required to plead probable cause as an affirmative defense in its answer. We disagree. In an action for false arrest, the burden is on the plaintiff to prove that an arrest was unlawful—i.e., without probable cause. See Noel v. King County, 48 Wn. App. 227, 236, 738 P.2d 692 (1987). As a result, probable cause is not an affirmative defense that must be pled.

circumstances, based on reasonably trustworthy information, sufficient to cause a reasonable officer to believe a crime has been committed." Gaddy, 152 Wn.2d at 70. In a false arrest action, "unless the evidence conclusively and without contradiction establishes the lawfulness of the arrest, it is a question of fact for the jury to determine whether an arresting officer acted with probable cause." McBride, 95 Wn. App. at 38; Gurno v. Town of LaConner, 65 Wn. App. 218, 223, 828 P.2d 49 (1992).

B

Here, the arresting officers believed that they had probable cause to arrest Bares for possessing stolen property in the second degree, RCW 9A.56.160, and trafficking in stolen property in the first degree, RCW 9A.82.050. A person commits second degree possession of stolen property if they possess stolen property exceeding $750 but less than $5,000. RCW 9A.56.160(1). And "'[p]ossessing stolen property' means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto." RCW 9A.56.140(1). A person commits the crime of trafficking stolen property when the person "knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property." RCW 9A.82.050.

The record establishes that the officers objectively and reasonably believed that Bares had committed a crime. Before his arrest, Prince identified Bares's chainsaw in the OfferUp posting as his missing chainsaw. Additionally, officers observed the last four digits of the serial number were the same as the missing chainsaw. The chainsaw on the listing also shared the same aftermarket feature as Prince's stolen chainsaw.

After officers identified Bares as the seller of the chainsaw, they looked at his other OfferUp posting and learned that Bares was selling another chainsaw on OfferUp that matched the make and model of another stolen chainsaw. The officers also knew that Bares had previously been contacted by FWPD about possibly selling a stolen chainsaw. Then, when Bares handed Detective Antholt the chainsaw in the parking lot, Detective Antholt observed that the full serial number was "clear and legible" and matched the serial number of Prince's stolen chainsaw. Detective Antholt also knew that Bares was dishonest about how long he owned the chainsaw, and he observed that Bares became nervous as the two discussed the price.

Bares argues that the officers lacked probable cause because Detective Antholt's report did not state that he communicated information about the serial number to the arresting officers before the arrest. But because Bares did not make this argument below, it is waived. RAP 2.5(a). The record shows that the arresting officers met and discussed the operation in advance, and they were able to observe the purchase from their vehicles.

Bares next argues that there was a dispute about the price of the chainsaw. The crime of possessing stolen property in the second degree requires that the property be over $750. Bares listed the chainsaw for $800 and Detective Antholt initially offered $700 before buying it for $760. The purchase also included a screwdriver, chains, and oil. Bares argues that the value of the accessories is not in the record, so the price paid at the sale does not established the value of the chainsaw. We disagree. Officers were aware that items on OfferUp are often sold for under market value. Additionally, the theft inventory report showed that the chainsaw was worth over $800.

Bares lastly argues that there was a genuine dispute of fact because the theft inventory list is unreliable. He argues that the theft inventory list is dated at 10:40 a.m. and the initial report without the serial numbers is dated at 10:20 a.m. He asserts that Prince would probably not have time to find all of the serial numbers for the theft inventory list in only 20 minutes. Lastly, he notes that the theft inventory sheet has different handwriting and pen colors. We disagree. This is only a speculative assertion. There is no evidence that Prince did not complete the inventory list in 20 minutes or that it is unreliable because the handwriting differs. Without more, Bares's speculation cannot overcome summary judgment.

The trial court did not err in dismissing Bares's litigation on summary judgment. We affirm.[3]

_____
Mann, J.


WE CONCUR:

_____        _____
Chung, J.

---

[3] Bares assigns error to the trial court's determination that officers were not negligent in their investigation and arrest of Bares. But Bares provides no argument as to this specific claim in his brief. "A party that offers no argument in its opening brief on a claimed assignment of error waives the assignment." Brown v. Vail, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010).